IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SAM KHOLI ENTERPRISES, INC. | § | |
|      Plaintiff/Counter-Defendant | § | |
| v. | § | |
| | § | |
| TOM R. THOMPSON | § | Civil Action No. W-08-CA-105 |
| DBA | § | |
| THOMPSON TRUCKING, | § | |
|      Defendant/Counter-Plaintiff | § | |
| v. | § | |
| | § | |
| SAM KHOLI | § | |
|      Third-Party Defendant | § | |

### TOM R. THOMPSON D/B/A THOMPSON TRUCKING'S
### APPLICATION FOR POST-JUDGMENT TURNOVER RELIEF

TO THE HONORABLE WALTER S. SMITH, JR., UNITED STATES DISTRICT JUDGE:

Pursuant to Federal Rule of Civil Procedure 69 and Texas Civil Practice and Remedies Code §31.002, Tom R. Thompson d/b/a Thompson Trucking ("Mr. Thompson") hereby makes application for post-judgment turnover relief. In support of his Application, Mr. Thompson would show:

### I.  First Request for Turnover Relief

1. This Court signed its Amended Judgment on October 23, 2009 [Document 99], awarding Defendant/Counter-Plaintiff, Tom R. Thompson d/b/a Thompson Trucking a joint and several judgment against Sam Kholi Enterprises, Inc., and Sam Kholi in the amount of $2,316,670.00, bearing post-judgment interest at the rate of .48% until satisfied, awarding attorneys' fees in the amount of $30,569.08, and pre-judgment interest in the amount of $132,189.00.

2.   On December 21, 2010, Judgment-debtor Sam Kholi Enterprises, Inc. filed in the Superior Court of the State of California, County of San Diego – Central Division, a Complaint styled Case No. 37-2010-00106420-CU-FR-CTL, *Sam Kholi Enterprises, Inc.*, a California Corporation, v. *Tom R. Thompson, individually and dba Thompson Trucking; Jones Motor Company, Inc.*, a Pennsylvania corporation qualified to transact intrastate business in the State of California; *Jones Motor Group, Inc.*, a subsidiary of Jones Motor Company, Inc.; *Jones Express, Inc.*, a subsidiary of Jones Motor Company, Inc., and *Does 1 through 50, inclusive* (hereinafter the "California Action").   A true and correct copy of the California Action is attached hereto as Exhibit "A".   The California Action filed by Judgment-debtor Sam Kholi Enterprises, Inc., is virtually identical to the prior action filed and litigated to verdict in this Court under this Cause Number.

3.   Mr. Thompson filed a Notice of Removal of Action, removing the California Action to The United States District Court for the Southern District of California under Cause Number 3:11-CV-00177-W-POR on January 27, 2011.   A true and correct copy of Mr. Thompson's Notice of Removal of Action can be accessed through the PACER System, Cause Number 3-11-CV-0177-W-JMA, Document 1.

4.   Defendants Jones Express, Inc., Jones Motor Group, Inc., and Jones Motor Company, Inc., (hereinafter "Jones Defendants") filed a Cross-Complaint against Mr. Thompson, asserting equitable indemnity, contribution, and requesting declaratory relief on February 9, 2011.   Those claims were dismissed by Judge Whelan on September 7, 2011.   A true and correct copy of the Order Granting Motion to Dismiss Cross-Complaint and Denying as Moot Motion to Transfer Venue can be accessed through PACER System, Cause Number 3-11-CV-0177-W-JMA, Document 33.

5.  Plaintiff Sam Kholi Enterprises, Inc. moved to voluntarily dismiss Mr. Thompson from the California Action on March 2, 2011.  See PACER System, Southern District of California, Cause Number 3:11-CV-00177-W-POR, Documents 12 and 14.

6.  Mr. Thompson applies for post-judgment turnover relief.  Mr. Thompson requests that the Court order Sam Kholi Enterprises, Inc., and Sam Kholi to turnover, or cause to be turned over, any judgment entered in the California Action, including interest and fees, in favor of Sam Kholi Enterprises, Inc., or Sam Kholi, or the payment of any judgment or settlement proceeds to be paid to or obtained by Sam Kholi Enterprises, Inc., or Sam Kholi.  Mr. Thompson requests the turnover to be made to him directly, or, alternatively, to the Sheriff of McLennan County, Texas, for sale in execution and partial satisfaction of Mr. Thompson's judgment in this Court. Mr. Thompson also requests all orders necessary to accomplish the turnover as neither Mr. Kholi nor Sam Kholi Enterprises, Inc., is likely to voluntarily comply with any post-judgment order of this Court.

7.  Pursuant to Fed. R. Civ. P. 69 and Tex. Civ. Prac. & Rem. Code §31.002(e), Mr. Thompson requests he be awarded reasonable costs, including attorneys' fees.

## II.     <u>Second Request for Turnover Relief</u>

8.  On May 4, 2011, Judgment-debtor Sam Kholi Enterprises, Inc., filed in The United States District Court for the Southern District of California, a Complaint styled Case No. 3:11-cv-00970-W, *Sam Kholi Enterprises, Inc.,* a California Corporation; *Payrolling.com Corp.*, a California Corporation v. *Comsys Services, LLC,* a Delaware corporation; and *Innovative Logistics Support Services Corp.*, a Louisiana corporation; and *Does 1-10,* (hereinafter the "Kholi Action").  A true and correct copy of the Kholi Action is attached hereto as Exhibit "B".

9.  Mr. Thompson applies for post-judgment turnover relief.  Mr. Thompson requests that the Court order Sam Kholi Enterprises, Inc. and Sam Kholi to turnover, or cause to be turned over, any judgment entered in the Kholi Action, including interest and fees, in favor of Sam Kholi Enterprises, Inc. or Sam Kholi, or the payment of any judgment or settlement proceeds to be paid to or obtained by Sam Kholi Enterprises, Inc.  Mr. Thompson requests the turnover to be made to him directly, or, alternatively, to the Sheriff of McLennan County, Texas, for sale in execution and partial satisfaction of Mr. Thompson's judgment in this Court. Mr. Thompson also requests all orders necessary to accomplish the turnover as neither Mr. Kholi nor Sam Kholi Enterprises, Inc., is likely to voluntarily comply with any post-judgment order of this Court.

10. Pursuant to Fed. R. Civ. P. 69 and Tex. Civ. Prac. & Rem. Code §31.002(e), Mr. Thompson requests he be awarded reasonable costs, including attorneys' fees.

### III.    Third Request for Turnover Relief

11. On or about December 14, 2010, Judgment-debtor Sam Kholi filed in The 250th District Court of Travis County, Texas, a Complaint styled Cause No. D-1-GN-10-004361, *Sam Kholi* v. *Steven Gregory White, an Individual; Jeffrey A. Armstrong, an Individual; and Naman, Howell, Smith & Lee, P.L.L.C., a Domestic Limited Liability Company,* (hereinafter the "Malpractice Action").  A true and correct copy of the Malpractice Action is attached hereto as Exhibit "C".

12. Mr. Thompson applies for post-judgment turnover relief.  Mr. Thompson requests that the Court directly order a turnover directly to Mr. Thompson Mr. Kholi's entire interest in the Malpractice Action itself and all causes of action plead, related to, or associated with the Malpractice Action, including all files, evidence or discovery of any nature relating to or associated with that case and all underlying causes of action (whether pleaded or not).  Mr.

Thompson also requests all orders necessary to accomplish the turnover as Mr. Kholi is not likely to voluntarily comply with any post-judgment order of this Court.

13. Mr. Thompson requests the Court to specifically rule that this claim is subject to turnover and that opinions to the contrary are not applicable to the facts of this order.  (See, for instance, *Britton v. Seale*, 81 F.3d 602, 604 (5th Circuit 1996) and an unpublished opinion at 1997 Tex. App. Lexis 4719).

14. Pursuant to Fed. R. Civ. P. 69 and Tex. Civ. Prac. & Rem. Code §31.002(e), Mr. Thompson requests he be awarded reasonable costs, including attorneys' fees.

## **PRAYER**

WHEREFORE, Mr. Thompson respectfully prays that the Court grant his Application for Turnover Relief, that the Court order Sam Kholi and Sam Kholi Enterprises, Inc., to turnover as requested herein (1) Sam Kholi/Sam Kholi Enterprises Inc.'s entire interest in any judgment, payment of judgment or settlement in the California Action currently pending in The United States District Court for the Southern District of California, Cause Number 3:11-CV-00177-W-POR; (2) Sam Kholi/Sam Kholi Enterprises Inc.'s entire interest in any judgment, payment of judgment or settlement in the California Action currently pending in The United States District Court for the Southern District of California, Cause Number 3:11-cv-00970-W; and (3) Sam Kholi's entire interest in the the Malpractice Action and all causes of action (whether pleaded or not) in the Malpractice Action currently pending in the 250th District Court of Travis County, Texas; and for Mr. Thompson's reasonable costs, including attorneys' fees.

Respectfully submitted,

/s/
_____

JACK R. CREWS
State Bar No.:  05072300
J. MORGAN DRISCOLL
State Bar No.: 24065166
BAIRD, CREWS, SCHILLER & WHITAKER, P.C.
15 North Main Street
Temple, TX   75601
Telephone:  (254) 774-8333
Fax:  (254) 774-9353

ATTORNEYS FOR TOM THOMPSON DBA
THOMPSON TRUCKING

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing *"Tom R. Thompson d/b/a Thompson Trucking's Application for Post-Judgment Turnover Relief"* has been electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorney(s) of record, in accordance with the FEDERAL RULES OF CIVIL PROCEDURE 5(b)(2)(D), on this the 25th day of October, 2011, addressed to:

Christian J. Hack
Sheehy, Lovelace and Mayfield
510 N. Valley Mills Dr.
Suite 500
Waco, TX 76710
(254) 772-8022
Fax: (254) 772-9297
Email: chack@slmpc.com

Daniel Anthony Lawton
Lawton Law Firm
402 West Broadway, Ste. 1860
San Diego, CA 92101
(619) 595-1406
Fax: (619) 595-1520
Email: dlawton@lawtonlaw.com

ATTORNEYS FOR SAM KHOLI ENTERPRISES, INC.:
Amelia A. McDermott
Law Offices of Amelia A. McDermott
4626 Albuquerque Street
San Diego, California  92109
Fax:  (858) 866-2657

Grant G. Teeple
Gregory M. Garrison
Jason N. Black
Zachariah R. Tomlin
TEEPLE HALL, LLP
 9255 Towne Centre Drive, Suite 500
San Diego, CA 92121
Fax: (858) 622-7878

ATTORNEY FOR JONES MOTOR GROUP:
Connie L. Benson
Williamson Law Group
1851 E. 1st Street, Ste. 1225
Santa Ana, California  92705

_____/s/_____

JACK R. CREWS

# EXHIBIT "A"

1   Amelia A. McDermott (SBN 204997)
    LAW OFFICES OF AMELIA A. McDERMOTT
2   4626 Albuquerque Street
    San Diego, California 92109
3
    Telephone: (858) 866-2600
4   Facsimile: (858) 866-2657

5   Attorneys for plaintiff SAM KHOLI ENTERPRISES, INC., a California Corporation

6

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **COUNTY OF SAN DIEGO – CENTRAL DIVISION**

10
                                          Case No.   **37-2010-00106420-CU-FR-CTL**
11  SAM KHOLI ENTERPRISES, INC., a
    California Corporation,                **COMPLAINT FOR:**
12
                Plaintiff,                 **1) INTENTIONAL INTERFERENCE WITH**
13                                         **   CONTRACTUAL RELATIONS;**
                                           **2) INTENTIONAL INTERFERENCE WITH**
14          v.                             **   PROSPECTIVE BUSINESS**
                                           **   ADVANTAGE;**
15  TOM R. THOMPSON, individually and dba  **3) FRAUD IN THE INDUCEMENT;**
    THOMPSON TRUCKING; JONES MOTOR         **4) INTENTIONAL**
16  COMPANY, INC. a Pennsylvania corporation **   MISREPRESENTATION;**
    qualified to transact intrastate business in the **5) FRAUD - FORGERY;**
17  State of California; JONES MOTOR GROUP, **6) CIVIL CONSPIRACY; AND**
    INC., a subsidiary of JONES MOTOR      **7) DECLARATORY RELIEF**
18  COMPANY, INC.; and JONES EXPRESS,
    INC., a subsidiary of JONES MOTOR
19  COMPANY, INC., and DOES 1 through 50,
    inclusive,
20
                Defendants.
21

22

23          **COMES NOW** plaintiff SAM KHOLI ENTERPRISES, INC., a California corporation, ("SKE")

24  and alleges against defendants, TOM R. THOMPSON, individually and dba THOMPSON TRUCKING;

25  JONES MOTOR COMPANY, INC. a Pennsylvania corporation qualified to transact intrastate business

26  in the State of California; JONES MOTOR GROUP, INC., subsidiary of JONES MOTOR COMPANY,

27  INC.; and JONES EXPRESS, INC., a subsidiary of JONES MOTOR COMPANY, INC., and DOES 1

28  through 50, inclusive (collectively "DEFENDANTS") as follows:

---

*Sam Kholi Enterprises, Inc. v. Tompson, et al.*
Complaint                                    1                        Case No.

## PRELIMINARY ALLEGATIONS

1.      SAM KHOLI ENTERPRISES, INC. ("SKE") is and was at all material times herein a California corporation residing and transacting business in and within the State of California with its principal place of business in San Diego, California.

2.      SKE is informed and believes and thereon alleges that TOM R. THOMPSON, individually and dba THOMPSON TRUCKING ("THOMPSON") is and was at all material times herein an individual residing in the County of McLennan, State of Texas. SKE is further informed and believes that THOMPSON TRUCKING is a sole proprietorship doing business in the County of San Diego, State of California.

3.      SKE is informed and believes and thereon alleges that JONES MOTOR COMPANY, INC., ("JMC") is a Pennsylvania corporation qualified to transact intrastate business in the State of California. SKE is further informed and believes and thereon alleges that JMC is and was at all material times herein transacting business in the County of San Diego, State of California.

4.      SKE is informed and believes and thereon alleges that JONES MOTOR GROUP, INC., ("JMG") is a Pennsylvania corporation and a subsidiary of JONES MOTOR COMPANY, INC., a Pennsylvania corporation qualified to transact intrastate business in the State of California. SKE is further informed and believes and thereon alleges that JMG is and was at all material times herein transacting business in the County of San Diego, State of California.

5.      SKE is informed and believes and thereon alleges that JONES EXPRESS, INC., ("EXPRESS") is a subsidiary of JONES MOTOR COMPANY, INC., a Pennsylvania corporation qualified to transact intrastate business in the State of California. SKE is further informed and believes and thereon alleges that EXPRESS is and was at all material times herein transacting business in the County of San Diego, State of California.

6.      SKE is ignorant of the true names and capacities, whether individual or otherwise, of defendants sued as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. SKE will amend this complaint to allege their true names and capacities when ascertained. SKE is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that SKE's injuries as herein alleged

1  were proximately caused by such defendants.

2      7.    SKE is further informed and believes, and thereon alleges, that each of the defendants

3  is, and at all material times was, the agent, servant, or employee of each of the remaining defendants,

4  and was acting within the course and scope of said agency or employment with the approval, knowledge

5  and/or consent of each of the remaining defendants.

6                          **VENUE AND JURISDICTION**

7      8.    Jurisdiction is proper in the State of California, in and for the County of San Diego,

8  because all of the DEFENDANTS conduct business in the State of California, County of San Diego.

9      9.    Venue is proper in the State of California, in and for the County of San Diego, because

10  some of the acts of DEFENDANTS alleged herein occurred in San Diego, California.

11                          **GENERAL ALLEGATIONS**

12      10.    In 2007, SKE's President, Sam Kholi, contacted THOMPSON after seeing his

13  advertisement seeking truck driver owner/operators in the State of California. When Mr. Kholi contacted

14  THOMPSON, the woman who answered the telephone stated "Jones Motor Group". This initially

15  confused Mr. Kholi as he thought he was calling THOMPSON. However, the woman who answered told

16  him he had the right telephone number.

17      11.    After multiple telephone conversations with THOMPSON, in the fall of 2007 Mr. Kholi

18  traveled to Coryell County, Texas with the hope of purchasing THOMPSON TRUCKING, which

19  THOMPSON had informed him had a well-established customer base that Mr. Kholi could service with

20  SKE's existing inventory of tractors and trailers as well as any tractors and trailers purchased from the

21  sale of THOMPSON TRUCKING.

22      12.    When Mr. Kholi met with THOMPSON, he represented to Mr. Kholi that THOMPSON

23  TRUCKING had an extensive customer list that would stay loyal and could be transferred as a legitimate

24  asset to any buyer who purchased THOMPSON TRUCKING. THOMPSON further represented to Mr.

25  Kholi that his key employees were bound by non-competition agreements and would remain with the

26  company in order to continue to serve and maintain the relationships with the customers that

27  THOMPSON had under ongoing contractual agreements.

28  ///

*Sam Kholi Enterprises, Inc. v. Tompson, et al.*
Complaint                                          3                              Case No.

13.     As discussions progressed between THOMPSON and Mr. Kholi with regard to the sale of THOMPSON TRUCKING to SKE, THOMPSON traveled to San Diego, California to meet with Mr. Kholi. While in San Diego, California, THOMPSON continued to discuss the terms of the agreement with Mr. Kholi and he further inspected multiple real properties that were potentially to be used as collateral for the sale.

14.     Prior to entering into any agreement with THOMPSON, on or about October 7, 2007, Mr. Kholi met with representatives of JMC. Unknown to Mr. Kholi at the time, THOMPSON and JMC's principal, Jim Koegel, among others, were in contact with each other to coordinate with regard to the representations made to Mr. Kholi as to THOMPSON's relationship with JMC and its subsidiaries. Specifically, THOMPSON and JMC both represented to Mr. Kholi that JMC and its subsidiaries provided various services to THOMPSON TRUCKING, including the following: (1) Computer software and hardware; (2) Non-recourse accounts receivable and cash flow; (3) Liability and Cargo Insurance; (4) Department of Transportation and Insurance compliance; (5) Non-recourse financing to owner/operators; and (6) Lender services.

15.     Importantly, at the time THOMPSON, JMC, and its subsidiaries made representations to SKE with regard to THOMPSON's relationship with JMC, THOMPSON was subject to a legally binding written agreement with EXPRESS entitled "Consulting and Non-Compete Agreement" ("Consulting Agreement"). According to the express terms of the Consulting Agreement, THOMPSON agreed to devote his "full working time and attention to the service of JEX and to the affairs of JEX." Moreover, pursuant to the terms of the Consulting Agreement, "Thompson shall not, without the written consent of JEX, directly or indirectly render services to or for a person, association, or other business that competes with the interests of JEX."

16.     At no time did THOMPSON, JMC, or any of its subsidiaries inform Mr. Kholi of the contents of the Consulting Agreement, that THOMPSON was exclusively bound to work for EXPRESS, or that THOMPSON was subject to a Non-Compete Agreement with EXPRESS. To the contrary, Mr. Kholi did not learn of the existence of the Consulting Agreement, or the agreements which it contained until at least late 2008 at the earliest.

/ / /

17.     Based upon the above representations made by both THOMPSON and JMC and its subsidiaries, among others, on October 12, 2007, Mr. Kholi and THOMPSON entered into a memorandum of understanding entitled "Agreement for the Purchase and Sale of Business" wherein THOMPSON agreed to sell SKE his business that included real estate valued at $150,000.00, trailers valued at $400,000.00, other equipment valued at $50,000.00, and goodwill valued at $3,030,000.00 (the "Agreement"). THOMPSON's valuation of the business' goodwill was based upon his long-term and ongoing customer and client relationships and key employees who maintained those relationships.

18.     As part of the Agreement, THOMPSON agreed to sign a non-compete agreement with SKE and to work as SKE's employee for one year after the date of sale. In reality, however, THOMPSON could not agree to sign a non-compete agreement with SKE or to work for SKE as its employee for one year after the sale date because he was already bound by the terms of the Consulting Agreement he previously had entered into with EXPRESS.

19.     Pursuant to the Agreement, on or about October 12, 2007, SKE paid THOMPSON an initial deposit of $646,666.66 and began making monthly installment payments of $16,666.00 per month towards the remaining outstanding balance of $2,983,333.34 as agreed. In turn, THOMPSON was obligated to transfer title to his real property located at 206 South 8th Street, Copperas Cove, Texas 76522 and title to 43 trailers as well as furniture, equipment, and other tangible assets to SKE. THOMPSON never transferred title to his real property to SKE, never transferred clean title to the 43 trailers to SKE, and ultimately blocked SKE's access to the furniture, equipment, and other tangible assets. In fact, Mr. Kholi later learned that THOMPSON did not even own or hold title to the 43 trailers when he entered into the Agreement. Instead, the 43 trailers were owned by EXPRESS.

20.     In the weeks and months that followed, the terms of the sale were mutually changed several times; however, THOMPSON's customer list and relationships as well as his key employees who maintained those relationships remained the primary financial component of the sale.

21.     Then in January of 2008, Mr. Kholi suspected that THOMPSON did not, in fact, have a well established customer base as he represented. Instead, Mr. Kholi began to believe that THOMPSON TRUCKING's business mostly relied upon third party brokers, and its most important client, known as Harbor Freight, a California corporation, was actually controlled by JMC.

---

22.     When Mr. Kholi voiced his concerns to THOMPSON, JMC and its subsidiaries, and Harbor Freight, Mr. Kholi was assured that THOMPSON's top producing account – Harbor Freight – was his actual customer and would stay with the business after the sale. Based upon this assurance, Mr. Kholi paid another $600,000.00 on January 31, 2008 towards the outstanding balance owed on the purchase price.

23.     Despite THOMPSON's representations that his key employees were bound by non-compete agreements, in about March of 2008 they left SKE and began to work for JMC. Specifically, SKE is informed and believes that without SKE's knowledge or consent, on or about March 6, 2008, two of SKE's key employees that were part of the sale of THOMPSON TRUCKING – Nora and Debbie – left SKE's office for a meeting with JMC which lasted approximately three hours. During this meeting, SKE is informed and believes that JMC induced Nora and Debbie, among other SKE employees, to breach their Non-Compete Agreements, leave SKE, and goto work for JMC. To this end, SKE is informed and believes that JMC showed Nora and Debbie a contract between EXPRESS and Harbor Freight. A representative of JMC also showed Debbie Department of Transportation Documents she had signed and threatened that she could goto jail because she was not "safety" certified.

24.     Based upon the threats and inducement of JMC and its subsidiaries, on March 10, 2008, numerous key employees of SKE, including but not limited to Debbie, Nora, Leigh Ann, Karmen, Petra, and Bubba, did not show up for work. Instead, on the Saturday prior they went to SKE's offices and cleaned out their desks without SKE's knowledge or consent. On or about March 10, 2008, many of SKE's key employees then began working for JMC.

25.     When SKE's employees left to work for JMC, they destroyed or removed business records vital to SKE's business interests and abandoned rolling truck deliveries operating at the time of departure. Specifically, SKE is informed and believes that JMC induced Nora to shred the Non-Compete Agreements that SKE's key employees had signed. Moreover, Mr. Kholi was unable to recover all of the trailers then operating, and has unpaid invoices pursuant to those loads that were delivered as promised by Mr. Kholi. Furthermore, THOMPSON locked SKE out of the computer systems regarding the rolling stock as well as employee records, to the detriment of SKE's normal business operations.

/ / /

26.     In addition, in March of 2008, Mr. Kholi finally confirmed that Harbor Freight was controlled by JMC and its subsidiaries, not THOMPSON as he and JMC had both represented.

27.     As a result, Mr. Kholi paid $1,313,333.33 for THOMPSON TRUCKING and was left with nothing – no title to real property, no clean title to the trailers, no equipment, furniture, or other tangible assets, no key employees, and no well-established customer base.

## FIRST CAUSE OF ACTION

### (INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS)

### (Alleged Against Defendants JMC, JMG, EXPRESS, and DOES 1 through 10)

28.     PLAINTIFF hereby realleges and incorporates herein by this reference, paragraphs 1 through 27, as though fully set forth herein.

29.     On October 12, 2007, SKE purchased THOMPSON TRUCKING from THOMPSON. The purchase included a transfer of THOMPSON's key employees who he represented were under Non-Compete Agreements as well as transfer of THOMPSON TRUCKING's contracts with existing customers including, but not limited to, Harbor Freight.

30.     Defendants JMC, JMG, EXPRESS, and DOES 1 through 10 had knowledge that SKE purchased THOMPSON TRUCKING from THOMPSON and the terms of that agreement. In fact, JMC, JMG, EXPRESS, and DOES 1 through 10 were directly involved in SKE's purchase of THOMPSON TRUCKING. Nevetheless, JMC, JMG, EXPRESS, and DOES 1 through 10 interfered with the agreement and contract between SKE and THOMPSON TRUCKING as well as those between SKE and its various employees as well as with Harbor Freight, including but not limited to, the following:

- JMC, JMG, EXPRESS, and DOES 1 through 10 induced SKE's key employees to violate their Non-Compete Agreements, leave SKE's employment, and goto work for JMC and its subsidiaries;

- JMC, JMG, EXPRESS, and DOES 1 through 10 induced Harbor Freight to breach its contract with THOMPSON TRUCKING and SKE and instead to enter into an agreement with JMC and its subsidiaries; and

///

///

1   • JMC, JMG, EXPRESS, and DOES 1 through 10 induced THOMPSON to sell SKE 43

2   trailers on October 12, 2007 which he did not own, but instead were owned by

3   EXPRESS.

4   31.   As a result of JMC, JMG, EXPRESS, and DOES 1 through 10's intentional interference

5   with SKE's contractual relationships with THOMPSON, key employees, and Harbor Freight, SKE could

6   not operate the business it purchased from THOMPSON TRUCKING for $3,630,000.00. In addition,

7   SKE lost income as well as the ability to keep his business solvent and income-earning. Thus, SKE has

8   been damaged in an amount in excess of $25,000.00, the exact amount to be determined at the time of

9   trial.

10   32.   JMC, JMG, EXPRESS, and DOES 1 through 10 did the acts herein alleged maliciously,

11   fraudulently and oppressively, amounting to despicable conduct, and in conscious disregard of SKE's

12   rights. The acts alleged herein were known to JMC, JMG, EXPRESS, and DOES 1 through 10. SKE is

13   thus entitled to recover punitive damages from JMC, JMG, EXPRESS, and DOES 1 through 10 in an

14   amoun according to proof at the time of trial.

15   **SECOND CAUSE OF ACTION**

16   **(INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE)**

17   **(Alleged Against Defendants JMC, JMG, EXPRESS, and DOES 1 through 10)**

18   33.   SKE hereby realleges and incorporates herein by this reference Paragraphs 1 through 32,

19   inclusive, as though fully set forth herein.

20   34.   On October 12, 2007, SKE purchased THOMPSON TRUCKING from THOMPSON.

21   THOMPSON agreed to sell SKE his business that included real estate valued at $150,000.00, trailers

22   valued at $400,000.00, other equipment valued at $50,000.00, and goodwill valued at $3,030,000.00 (the

23   "Agreement"). The purchase included a transfer of THOMPSON's key employees who he represented

24   were under Non-Compete Agreements as well as transfer of THOMPSON TRUCKING's contracts with

25   existing customers including, but not limited to, Harbor Freight.

26   35.   JMC, JMG, EXPRESS, and DOES 1 through 10 knew an economic relationship existed

27   between SKE and THOMPSON, SKE and its key employees, and SKE and Harbor Freight. JMC, JMG,

28   EXPRESS, and DOES 1 through 10 knew that this economic relationship included the probability of

1  future economic benefit for SKE.

2      36.    JMC, JMG, EXPRESS, and DOES 1 through 10 intentionally interfered with these

3  economic relationships. To this end, JMC, JMG, EXPRESS, and DOES 1 through 10 interfered with

4  the economic relationship between SKE and THOMPSON, key employees, and Harbor Freight as

5  follows:

6      •    JMC, JMG, EXPRESS, and DOES 1 through 10 induced SKE's key employees to

7           violate their Non-Compete Agreements, leave SKE's employment, and goto work for

8           JMC and its subsidiaries;

9      •    JMC, JMG, EXPRESS, and DOES 1 through 10 induced Harbor Freight to breach its

10          contract with THOMPSON TRUCKING and SKE and instead to enter into an agreement

11          with JMC and its subsidiaries; and

12     •    JMC, JMG, EXPRESS, and DOES 1 through 10 induced THOMPSON to sell SKE 43

13          trailers on October 12, 2007 which he did not own, but instead were owned by

14          EXPRESS.

15     37.    As a result of JMC, JMG, EXPRESS, and DOES 1 through 10's intentional interference

16  with SKE's prospective economic advantage, SKE could not operate the business it purchased from

17  THOMPSON TRUCKING for $3,630,000.00. In addition, SKE lost income as well as the ability to keep

18  his business solvent and income-earning. Thus, SKE has been damaged in an amount in excess of

19  $25,000.00, the exact amount to be determined at the time of trial.

20     38.    The aforementioned acts of JAMC, JMG, EXPRESS, and DOES 1 through 10 were

21  willful, malicious, despicable, cruel, wicked and fraudulent and entitle SKE to punitive or exemplary

22  damages, the exact amount to be determined at trial.

23                    **THIRD CAUSE OF ACTION**

24                    **(FRAUD IN THE INDUCEMENT)**

25      **(Alleged Against Defendants JMC, JMG, EXPRESS, and DOES 1 through 10)**

26     39.    SKE hereby realleges and incorporates herein by this reference Paragraphs 1 through 32,

27  inclusive, as though fully set forth herein.

28  ///

---

40.     Beginning in or about September of 2007 and continuing thereafter until March of 2008, through their employees, agents, and/or representatives, JMC, JMG, EXPRESS, and DOES 1 through 10 falsely and fraudulently and with the malicious intent to defraud and deceive SKE and induce SKE to enter into an agreement to purchase THOMPSON TRUCKING made the oral representations to Mr. Kholi as set forth above including but not limited to the following:

- JMC, JMG, EXPRESS, and DOES 1 through 10 failed to disclose that THOMPSON was legally bound by the terms of the Consulting Agreement, that THOMPSON was exclusively bound to work for JMC and its subsidiaries, and that THOMPSON was subject to a Non-Compete agreement. Instead, JMC, JMG, EXPRESS, and DOES 1 through 10 represented to Mr. Kholi that THOMPSON was legally able to enter into an agreement to sell THOMPSON TRUCKING to SKE, which included a clause that required THOMPSON to sign a Non-Compete Agreement with SKE and to work for SKE for one year from the date of purchase; and

- JMC, JMG, EXPRESS, and DOES 1 through 10 represented to Mr. Khoi that Harbor Freight was not a customer of JMC, JMG, or EXPRESS, but instead was a customer of THOMPSON.

41.     Through their employees, agents and/or representatives, JMC, JMG, EXPRESS, and DOES 1 through 10's representations were false and then known by JMC, JMG, EXPRESS, and DOES 1 through 10 in that JMC, JMG, EXPRESS, and DOES 1 through 10 despicably knew that THOMPSON was not legally able to enter into the Agreement for the purchase of THOMPSON TRUCKING because THOMPSON was legally bound to exclusively work for EXPRESS and was subject to a Non-Compete Agreement with EXPRESS. Moreover, JMC, JMG, EXPRESS, and DOES 1 through 10 despicably knew that Harbor Freight was a customer of JMC and its subsidiaries, not of THOMPSON TRUCKING.

42.     JMC, JMG, EXPRESS, and DOES 1 through 10 fraudulently induced SKE to enter into the Agreement with THOMPSON TRUCKING with the despicable intent of having all of THOMPSON's debts owed to it paid off with the monies paid by SKE and then with the despicable intent of thereafter taking over SKE's business by inducing key employees and customers to leave SKE for JMC and its subsidiaries, despicably not caring about SKE's interests and maliciously scheming to

1  increase JMC and its subsidiaries' own profits and wealth at SKE's expense. The intentional

2  misrepresentations and fraudulent non-disclosures made by employees and/or agents of JMC, JMG,

3  EXPRESS, and DOES 1 through 10 caused SKE damage in that SKE was induced into purchasing

4  THOMPSON TRUCKING for $3,630,000.00, a business SKE ultimately lost because of JMC, JMG,

5  EXPRESS, and DOES 1 through 10's despicable conduct.

6        43.    The representations made by agents and/or employees of JMC, JMG, EXPRESS, and

7  DOES 1 through 10 were made with the intent to defraud SKE, and were made for the purpose of

8  inducing SKE to rely upon them.

9        44.    SKE was unaware of the true facts but instead acted in justifiable reliance upon the

10  representations made by JMC, JMG, EXPRESS, and DOES 1 through 10 because they were

11  corporations in good standing the agents and/or employees of whom had given Mr. Kholi no indication

12  that they would make intentional misrepresentations to induce him into entering into the Agreement with

13  THOMPSON.

14        45.    At the time the misrepresentations were made and at the time SKE took the actions herein

15  alleged, SKE was ignorant of JMC, JMG, EXPRESS, and DOES 1 through 10's secret intention to

16  induce SKE into the Agreement to have THOMPSON's debt owed to it paid off and then to thereafter

17  take the business away from SKE. If SKE had known of the actual intentions of JMC, JMG, EXPRESS,

18  and DOES 1 through 10, it would not have entered into the Agreement with THOMPSON in reasonable

19  reliance thereon.

20        46.    SKE reasonably believed and relied on said representations made by JMC, JMG,

21  EXPRESS, and DOES 1 through 10 because he had no reason to doubt their accuracy, and in reliance

22  upon said representations, SKE was induced to take the actions detailed herein.

23        47.    As a direct and proximate result of JMC, JMG, EXPRESS, and DOES 1 through 10's

24  fraud and deceit and the facts herein alleged, SKE has been damaged in an amount in excess of

25  $3,630,000.00, the exact amount to be proven at the time of trial.

26        48.    As shown in the facts pleaded, JMC, JMG, EXPRESS, and DOES 1 through 10's conduct

27  described in this Complaint, all of which is incorporated herein by this reference, was intended by JMC,

28  JMG, EXPRESS, and DOES 1 through 10 to cause injury to SKE or was despicable conduct carried on

---

1  by JMC, JMG, EXPRESS, and DOES 1 through 10 with a cruel and unjust hardshp in conscious

2  disregard of SKE's rights, and was conducted with the intention to deprive SKE of property, legal rights

3  or otherwise cause injury, such as to constitute malice under <u>California Code of Civil Code</u> section 3294.

4  JMC, JMG, EXPRESS, and DOES 1 through 10's acts were done knowingly, willfully, and with

5  mailicious intent, with a conscious disregard of the rights of others conduct that subjected SKE to cruel

6  and unjust hardship in conscious disregard of SKE's rights, such that SKE is entitled to punitive dmages

7  in an amount appropriate to punish or set an example of JMC, JMG, EXPRESS, and DOES 1 through

8  10, in an amount to be determined by proof at trial.

9              **FOURTH CAUSE OF ACTION**

10             **(INTENTIONAL MISREPRESENTATION)**

11    **(Alleged Against Defendants JMC, JMG, EXPRESS, and DOES 1 through 10)**

12         49.    SKE hereby realleges and incorporates herein by this reference Paragraphs 1 through 32,

13  inclusive, as though fully set forth herein.

14         50.    Prior to SKE entering into the Agreement with THOMPSON and from October 12, 2007

15  until March of 2008, through their agents and/or employees, JMC, JMG, EXPRESS, and DOES 1

16  through 10 represented, among other things, that THOMPSON was not exclusively legally bound to

17  JMC, JMG, EXPRESS, and DOES 1 through 10 and was not subject to a Non-Compete Agreement with

18  them. Moreover, prior to SKE entering into the Agreement with THOMPSON and then on one more

19  than one occasion between October 12, 2007 to March, 2008, agents and/or employees of JMC, JMG,

20  EXPRESS, and DOES 1 through 10 expressly told Mr. Kholi that Harbor Freight was a customer of

21  THOMPSON TRUCKING, not JMC or any of its subsidiaries.

22         51.    The representations that agents and/or employees of JMC, JMG, EXPRESS, and DOES

23  1 through 10 made were false. The true facts were that THOMPSON was legally bound by the terms

24  of the Consulting Agreement, including but not limited to, that THOMPSON was to exclusively work

25  for EXPRESS and that THOMPSON was bound by a Non-Compete Agreement. Moreover, the true facts

26  were that Harbor Freight was at all times a customer of JMC and its subsidiaries. Agents and/or

27  employees of JMC and its subsidiaries made these representations to induce SKE into entering into the

28  Agreement to purchase THOMPSON TRUCKING because all of THOMPSON's debts owed to JMC

---

1   and its subsidiaries were to be paid in full by the proceeds from the sale. JMC, JMG, EXPRESS, and

2   DOES 1 through 10 knew that SKE would not enter into the Agreement if he did not receive said

3   representations from the agents and/or employees of JMC, JMG, EXPRESS, and DOES 1 through 10.

4       52.    When the agents and/or employees of JMC, JMG, EXPRESS, and DOES 1 through 10

5   made these representations, they knew, or should have known them to be false, but agents and/or

6   employees of JMC, JMG, EXPRESS, and DOES 1 through 10 made these representations with the intent

7   to induce SKE into entering the aforementioned Agreement and paying money in furtherance thereof.

8       53.    SKE, at the time these representations were made by agents and/or employees of JMC,

9   JMG, EXPRESS, and DOES 1 through 10, and at the time SKE entered into the Agreement and paid

10   money thereunder, was ignorant of the falsity of JMC, JMG, EXPRESS, and DOES 1 through 10's

11   agents and/or employees' representations and believed them to be true.

12       54.    SKE's reliance on JMC, JMG, EXPRESS, and DOES 1 through 10's representations was

13   reasonable, because there was nothing in SKE's dealings with the DEFENDANTS, and each of them,

14   during the negotiation of the Agreement which indicated that DEFENDANTS were misrepresenting any

15   material facts. SKE relied upon JMC, JMG, EXPRESS, and DOES 1 through 10's representations

16   because they represented themselves as knowledgeable and honest business people.

17       55.    As a result of the intentional misrepresentations by JMC, JMG, EXPRESS, and DOES

18   2 through 10, SKE has suffered injuries in an amount greater than twenty-five thousand dollars, the exact

19   amount to be proven at trial.

20       56.    The aforementioned acts of JMC, JMG, EXPRESS, and DOES 1 through 10 were wilful,

21   wanton, and malicious. JMC, JMG, EXPRESS, and DOES 1 through 10 are therefore responsible to

22   SKE for punitive and exemplary damages in an amount to be plead separately.

23                 **FIFTH CAUSE OF ACTION**

24                 **(FRAUD - FORGERY)**

25             **(Alleged Against All DEFENDANTS)**

26       57.    SKE hereby realleges and incorporates herein by this reference Paragraphs 1 through 32,

27   inclusive, as though fully set forth herein.

28   / / /

---

*Sam Kholi Enterprises, Inc. v. Tompson, et al.*
Complaint                   13                   Case No.

**Title to 43 Trailers**

58.     On October 12, 2007, SKE entered into the Agreement. A term of the Agreement was that THOMPSON would sell SKE 43 trailers that THOMPSON represented that he owned for $400,000.00. SKE later learned that on October 12, 2007, THOMPSON did not own the 43 trailers. Instead, on October 12, 2007, title to the 43 trailers was held by EXPRESS.

59.     Despite this, DEFENDANTS, and each of them, represented to SKE and Mr. Kholi that THOMPSON owned the 43 trailers in question. As a result, SKE paid THOMPSON $400,000.00 for 43 trailers on October 12, 2007, which THOMPSON did not own.

60.     Thereafter, in or about March of 2008, by means of forged, false and fraudulent means, EXPRESS attempted to transfer title to the 43 trailers to THOMPSON, who in turn attempted to transfer title to SKE. In so doing, DEFENDANTS, and each of them, fraudulently represented the date on the transfers as October 12, 2007. However, in reality, the title to the 43 trailers was not attempted to be transferred until March of 2008.

61.     Moreover, in attempting to transfer title to the 43 trailers to SKE, DEFENDANTS, and each of them, used false and fraudulent means to forge Mr. Kholi's name on the title's to each of the trailers. In reality, Mr. Kholi never signed any of the titles, and futher never did so on October 12, 2007 as represented on the titles.

62.     The fact Mr. Kholi never signed any of the titles was not the only fraud employed by DEFENDANTS. Here, the titles themselves state that they must be signed in front of a notary or by an issuing agent who is licensed as a vehicle dealer by the Pennsylvania State Board of Vehicle Manufacturers, Dealers and Salespersons, or its employee. Here, none of the 43 titles were signed before a notary. Moreover, SKE is informed and believes that none of the titles were signed by an issuing agent as required under Pennsylvania law. Despite this, DEFENDANTS, and each of them, have attempted to fraudulently hold the 43 titles – none of which were signed by Mr. Kholi – out as transferring title to the 43 trailers to SKE.

63.     By these fraudulent and unlawful means, DEFENDANTS, and each of them, misappropriated from SKE and converted to their personal use and possession $400,000.00 for allegedly the purchase of the 43 trailers, clean title to which has never been produced.

1    64.    By virtue of the wrongful acts of DEFENDANTS, and each of them, SKE is informed

2    and believes and thereon alleges that DEFENDANTS, and each of them, fraudulently converted

3    $400,000.00, the exact amount to be proven at the time of trial.

4    65.    The aforementioned conduct of DEFENDANTS, and each of them, was an intentional

5    deceit and concealment of a material fact known to them with the intention on the part of

6    DEFENDANTS, and each of them, to deprive SKE of property or legal rights or otherwise causing

7    injury, and was despicable conduct that subjected SKE to cruel and unjust hardship in conscious

8    disregard of SKE's rights, so as to justify an award of exemplary and punitive damages.

9
## SIXTH CAUSE OF ACTION

10
### (CIVIL CONSPIRACY)

11
### (Alleged Against All DEFENDANTS)

12    66.    SKE hereby realleges and incorporates herein by this reference Paragraphs 1 through 32,

13    inclusive, as though fully set forth herein.

14    67.    DEFENDANTS, and each of them, in taking the actions as more fully set forth herein

15    above, entered into a common plan, scheme, and conspiracy to induce SKE to enter into the Agreement

16    to purchase THOMPSON TRUCKING through intentional misrepresentations and non-disclosures and

17    to further interfere with SKE's rights in an attempt to gain control over SKE's business, among other

18    things.

19    68.    More specifically, SKE is informed and believes, and thereon alleges, that

20    DEFENDANTS entered into a common plan, scheme, and conspiracy to induce SKE to enter into the

21    Agreement to purchase THOMPSON TRUCKING and pay THOMPSON in excess of $3,000,000.00

22    so that THOMPSON could pay off his outstanding debt owed to JMC, JMG, and EXPRESS and then

23    JMC, JMG, and EXPRESS could take over SKE's business. Further, DEFENDANTS actually set out

24    to disrupt SKE's business not only by making intentional misrepresentations and non-disclosures, but

25    by causing SKE to lose its key employees and contract with Harbor Freight.

26    69.    As a direct and proximate result of the conduct of DEFENDANTS, and each of them,

27    SKE has suffered substantial compensable losses, including but not limited to the loss of the business

28    purchased from THOMPSON for $3,630,000.00, the exact nature and extent of which are not yet fully

1  ascertained, proof of which will be offered at the time of trial.

2        70.    The aforementioned acts of DEFENDANTS, and each of them, were intended to injure

3  SKE, and were in conscious disregard to the rights of SKE, and were undertaken with the knowledge

4  of probable injury to SKE's interests, and were therefore willful, oppressive, and wanton, and undertaken

5  with malice, and constitute despicable conduct. Therefore, SKE is entitled to punitive and exemplary

6  damages, according to proof at the time of trial.

7  **SEVENTH CAUSE OF ACTION**

8  **(DECLARATORY RELIEF)**

9  **(Alleged Against All DEFENDANTS)**

10        71.    SKE hereby realleges and incorporates herein by this reference Paragraphs 1 through 32,

11  inclusive, as though fully set forth herein.

12        72.    An actual controversy presently exists between SKE and DEFENDANTS, and each of

13  them, as to whether DEFENDANTS, and each of them, transferred SKE clean title to the 43 trailers. To

14  this end, SKE contends as alleged above that title to the 43 trailers was not properly transferred to him

15  in compliance with the requirements of the State of Pennsylvania but instead were transferred unlawfully

16  and with the use of forged signatures purporting to be that of Mr. Kholi.

17        73.    SKE desires a judicial determination of whether DEFENDANTS, and each of them,

18  transferred clean title to the 43 trailers to him. Otherwise, SKE will not have clean title to the 43 trailers

19  and will not be able to transfer title to other purchasers as it sees fit.

20        74.    A judicial determination is necessary and appropriate at the present time under all the

21  circumstances so that SKE may ascertain its rights and duties as to ownership of the 43 trailers.

22  **PRAYER**

23      **WHEREFORE**, SAM KHOLI ENTERPRISES, INC. respectfully prays for judgment as

24  follows:

25  **FIRST CAUSE OF ACTION (Intentional Interference with Contractual Relations)**

26        1.    For damages in excess of $25,000.00, the exact amount to be determined at the time of

27  trial, together with interest thereon from the date of the damages;

28        2.    For costs of the suit herein incurred;

3.      For punitive and exemplary damages in an amount to be determined at trial;

4.      For such other and further relief as the court may deem proper.

**SECOND CAUSE OF ACTION (Intentional Interference With Prospective Business Advantage)**

1.      For damages in excess of $25,000.00, the exact amount to be determined at the time of trial, together with interest thereon from the date of the damages;

2.      For costs of the suit herein incurred;

3.      For exemplary and punitive damages in an amount to be determined at trial;

4.      For such other and further relief as the court may deem proper.

**THIRD CAUSE OF ACTION (Fraud in the Inducement)**

1.      For damages in excess of $25,000.00, the exact amount to be determined at the time of trial, together with interest thereon from the date of the damages;

2.      For costs of the suit herein incurred;

3.      For exemplary and punitive damages in an amount to be determined at trial;

4.      For such other and further relief as the court may deem proper.

**FOURTH CAUSE OF ACTION (Intentional Misrepresentation)**

1.      For damages in excess of $25,000.00, the exact amount to be determined at the time of trial, together with interest thereon from the date of the damages;

2.      For costs of the suit herein incurred;

3.      For exemplary and punitive damages in an amount to be determined at trial;

4.      For such other and further relief as the court may deem proper.

**FIFTH CAUSE OF ACTION (Fraud – Forgery)**

1.      For damages in excess of $25,000.00, the exact amount to be determined at the time of trial, together with interest thereon from the date of the damages;

2.      For costs of the suit herein incurred;

3.      For exemplary and punitive damages in an amount to be determined at trial;

4.      For such other and further relief as the court may deem proper.

**SIXTH CAUSE OF ACTION (Civil Conspiracy)**

1    1.    For damages in excess of $25,000.00, the exact amount to be determined at the time of

2    trial, together with interest thereon from the date of the damages;

3    2.    For costs of the suit herein incurred;

4    3.    For exemplary and punitive damages in an amount to be determined at trial;

5    4.    For such other and further relief as the court may deem proper.

6    **SEVENTH CAUSE OF ACTION (Declaratory Relief)**

7    1.    That the Court determine the following:

8    ●    DEFENDANTS, and each of them, failed to transfer clean title to the 43 trailers

9    to SKE which resulted in damage to SKE in an amount in excess of $400,000.00,

10    the exact amount to be determined at trial; and

11    ●    DEFENDANTS, and each of them, are required to transfer clean title to the 43

12    trailers to SKE.

13    2.    For costs of the suit herein incurred;

14    3.    For such other and further relief as the court may deem proper.

15    Dated: December 20, 2010    LAW OFFICES OF AMELIA A. McDERMOTT

16

17    By:

18    Amelia A. McDermott, Attorneys for
plaintiff, SAM KHOLI ENTERPRISES, INC.

19

20

21

22

23

24

25

26

27

28

---

# EXHIBIT "B"

1 | Grant G. Teeple, Esq. [SBN 144760]
Gregory M. Garrison, Esq. [SBN 165215]
2 | Jason N. Black, Esq. [SBN 256261]
Zachariah R. Tomlin, Esq. [SBN 26563]
3 | TEEPLE HALL, LLP
9255 Towne Centre Drive, Suite 500
4 | San Diego, California 92121
Telephone: (858) 622-7878
5 | Facsimile: (858) 622-0411
E-Mails:   grant@teeplehall.com
6 |            greg@teeplehall.com
             jason@teeplehall.com
7 |            zack@teeplehall.com

8 | Attorneys for PLAINTIFFS

9 | **IN AND FOR THE UNITED STATES DISTRICT COURT**

10 | **SOUTHERN DISTRICT OF CALIFORNIA**

11

12 | SAM KHOLI ENTERPRISES, INC., a
California corporation;
13 | PAYROLLING.COM CORP., a California
Corporation,

14 |        Plaintiff,

15 | v.

16 |
COMSYS SERVICES, LLC, a Delaware
17 | corporation; and INNOVATIVE
LOGISTICS SUPPORT SERVICES
18 | CORP., a Louisiana corporation; and DOES
1-10,
19 |
20 |        Defendants.

21 | _____

Case No.

**'11 CV 0970 W      NLS**

COMPLAINT FOR RELIEF AND
DEMAND FOR JURY TRIAL AS
FOLLOWS:

1)      BREACH OF CONTRACT;
2)      BREACH OF THE IMPLIED
        COVENANT OF GOOD
        FAITH AND FAIR
        DEALING;
3)      ACCOUNT STATED; AND
4)      QUANTUM MERUIT

22 |        Plaintiffs SAM KHOLI ENTERPRISES, INC., a California corporation doing

23 | business as PAYROLLING.COM ("SKE") and PAYROLLING.COM CORP.

24 | ("PAYROLLING") by their undersigned attorney, for their claims against defendants,

25 | COMSYS SERVICE, LLC, a Delaware corporation ("COMSYS"); INNOVATIVE

26 | LOGISTICS SUPPORT SERVICES CORP., a Louisiana corporation ("ILSS"); and

27 | DOES 1 through 10 (collectively "DEFENDANTS"), allege as follows:

28 | / / /

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the subject matter of this action under 28 United States Code section 1332.

2.      With respect to the Court's jurisdiction under 28 United States Code section 1332, plaintiff is domiciled in the State of California, where it has its principal place of business. Defendants are corporations organized and existing under the laws of the State of Delaware and the State of Louisiana and are domiciliaries of the states of Texas and Lousiana.  The amount in controversy, without interest and costs, exceeds $75,000.00, as discussed below.

3.      Venue is proper in this judicial district pursuant to 28 United States Code section 1391( c).

## PARTIES

4.      SKE is a corporation incorporated, organized and existing under the laws of the State of California, which has as its principal place of business the County of San Diego, California. SKE has filed a fictitious business filing with the County of San Diego designating that it is doing business as Payrolling.com. SKE is in the business of offering services in the area of payroll, human resources, outsourcing, best practices, benefits, recruiting, and work force planning.

5.      PAYROLLING is a corporation incorporated, organized and existing under the laws of the State of California, which has as its principal place of business the County of San Diego, California. PAYROLLING is in the business of offering services in the area of payroll, human resources, outsourcing, best practices, benefits, recruiting, and work force planning.

6.      Defendant COMSYS is a corporation incorporated, organized, and existing under the laws of the State of Delaware. It has as one of its principal places of business in Houston, Texas. COMSYS operates as an information technology staffing, services, and solutions provider.

/ / /

Sam Kholi Enterprises, Inc. v. Comsys Service, LLC .          Case No.
Complaint

2

7.    Defendant ILSS is a corporation incorporated, organized, and existing under the laws of the State of Louisiana. It has as its principal place of business New Orleans, Louisiana. ILSS is a third-party resource company that assists individuals, corporations, and the government in lowering their break-even point and eliminating a large portion of overhead.

8.    The true names and capacities, whether individual, corporate, associate, representative or other, of DOES 1 through 10, inclusive, are unknown to SKE, who therefore sues them by such fictitious names. SKE will seek leave to amend this complaint to show the true names and capacities of said defendants when they are ascertained. SKE is informed and believes, and thereupon alleges, that each of the defendants named as a DOE, along with the named DEFENDANTS, is responsible in some manner for the occurrences herein alleged, and that SKE's injuries herein alleged were legally or proximately caused by said DEFENDANTS. Wherever it is alleged that any act or omission was also done or committed by any specifically named DEFENDANT, or by DEFENDANTS generally, SKE intends thereby to allege, and does allege, that the same act or omission was also done and committed by each and every defendant named as a DOE, and each named DEFENDANT, both separately and in concert or conspiracy with the named DEFENDANTS.

9.    PLAINTIFFS are informed and believe and thereon allege that at all material times herein alleged DEFENDANTS, and each of them whether known or unknown, were the agents, principals, employers, servants, employees and co-conspirators of the other DEFENDANTS, and each of them, whether named or unnamed, and at all relevant times herein, was acting within the scope of their authority as such agents, principals, employees, employers, and co-conspirators with permission and consent of the remaining named and unnamed DEFENDANTS.

10.    Whenever in this Complaint an act or omission of a corporation, limited liability company, or other such business entity is alleged, the said allegation shall be deemed to mean and include an allegation that the corporation, limited liability company,

1  or other such business entity acted or omitted to act through its authorized officers,
2  directors, shareholders, members, managers, agents, servants, authorized representatives
3  and/or employees, acting within the course and scope of their duties, that the acts or
4  omissions were authorized and ratified by the business entities' shareholders, members,
5  officers, directors and/or managers.

6                          **NATURE OF ACTION**

7          11.    SKE brings this action to recover damages it has suffered as a result of
8  DEFENDANTS', and each of them, breaches of contract and failure to pay for services
9  provided by SKE and/or PAYROLLING during the period between January 1, 2008 and
10 June 30, 2010.

11              **DEFENDANTS' WRONGFUL COURSE OF CONDUCT**

12         12.    SKE had an integrated relationship with the DEFENDANTS in this case.
13 To this end, BMC Software, Inc. ("BMC") was SKE's client. However, BMC did not pay
14 SKE directly, Instead, SKE would issue an invoice to BMC. BMC was then obligated
15 to pay COMSYS within 15 days of receipt of SKE's invoice. COMSYS would then pay
16 ILSS within seven days of payment from BMC. ILSS would then provide SKE with
17 immediate access to its funds for payment of the BMC invoice.

18 **The COMSYS Agreement**

19         13.    On April 4, 2005, SKE entered into a Supplier Participation Agreement for
20 BMC Software, Inc. VMS Program with COMSYS ("COMSYS Agreement"). A true and
21 correct copy of the COMSYS Agreement is attached hereto as Exhibit "A" and its terms
22 are incorporated herein by reference as though fully set forth.

23         14.    Pursuant to Paragraph 1 of the COMSYS Agreement, COMSYS was the
24 managed service provider for BMC. Pursuant to Paragraph 5 of the COMSYS
25 Agreement, COMSYS submitted work orders to SKE. SKE then performed personnel
26 services for BMC through COMSYS as its managed service provider based upon the
27 work orders. COMSYS was then obligated to pay SKE on behalf of BMC within 15 days
28 of receipt of SKE's bi-weekly consolidated invoice.

Sam Kholi Enterprises, Inc. v. Comsys Service, LLC .          Case No.
Complaint
                                    4

15.   SKE, for its part, performed all terms and conditions of the COMSYS Agreement which were not excused, waived or discharged. SKE paid up to 50 BMC employees at a time per pay period, basing its payments on digital records provided by COMSYS for work allegedly performed by BMC employees. At one time, SKE was advancing approximately $100,000.00 a week to BMC employees pursuant to the COMSYS Agreement.

16.   Beginning on or about January 1, 2008 and continuing until approximately June 30, 2010, COMSYS breached the COMSYS Agreement in multiple ways to SKE's detriment in an amount in excess of $75,000.00, the exact amount to be proven at the time of trial, including but not limited to: (1) COMSYS failed to pay SKE what it owed SKE as BMC's managed service provider for BMC's payroll to BMC's employees funded by SKE; and (2) COMSYS misrepresented to SKE that some of BMC's employees were qualified as 1099 when they were not.

17.   When in approximately May of 2010 SKE noticed large discrepancies between what COMSYS was paying to SKE and what appeared to be owed, SKE immediately contacted COMSYS in an attempt to resolve the issue. Unfortunately, in response COMSYS stonewalled SKE and refused to discuss in good faith the dispute, blaming the Fieldglass software BMC used to record its employees' time instead.

**The ILSS Agreement With BMC**

18.   On or about August 25, 2008, SKE's relationship with BMC and COMSYS was altered by the Addendum to Master Services Agreement entered into between BMC and ILSS. A true and correct copy of ILSS's Agreement with BMC is attached hereto as Exhibit "B" and its terms are incorporated herein by reference as though fully set forth.

19.   Just as with SKE, ILSS's Agreement with BMC states as follows:

> "BMC has chosen to use a third party to administer the process of obtaining the services of temporary technical or other personnel ("Personnel") to provide services to BMC through a managed service provider program. .. The third party administrator is COMSYS Information Technology Services, Inc. ("COMSYS").

---

Sam Kholi Enterprises, Inc. v. Comsys Service, LLC  .                     Case No.
Complaint

5

Under the MSP Program, BMC will submit on-line requisitions for services to be performed by temporary technical or other personnel ("Job Postings") requesting candidate submissions from all or specific contractor(s). The Job Postings will be distributed to contractors electronically, utilizing a web-based application (the "Application") hosted and maintained by its licensor, Fieldglass, as further described below.

Upon receipt of candidate, submissions from contractors responsive to the Job Postings, COMSYS will review same on behalf of BMC. BMC will then submit electronic orders via the Application, to a specific contractor for the selected individual ("Work Order"). [See Exhibit "C", ¶¶ 1.1 - 1.3].

20.   This Agreement between BMC and ILSS was then subcontracted to SKE according to the Statement of Work (SOW) specifically for the BMC Agreement awarded to ILSS and subcontracted to SKE, A true and correct copy of the SOW is attached hereto as Exhibit "C" and its terms are incorporated herein by reference as though fully set forth.

21.    Pursuant to the terms of the SOW, SKE's responsibilities included: (1) Full administration and oversight of the day to day operations of the program; (2) Payrolling all BMC workers as assigned/designated in the COMSYS Software; (3) Management and liability for all invoices and invoicing issues; (4) Customer service support to BMC, COMSYS and employees; (5) Maintenance of all insurances as required and necessary by the Master Service Agreement between BMC/COMSYS and ILSS/SKE; (6) Management of funds being transferred to and from SKE and ILSS's joint banking account as set -up by ILSS; (7) Facilitating and managing staffing relationship and positions when appropriate; and (8) Maintaining adequate workforce to manage the account.

22.    Pursuant to the terms of the SOW, ILSS's responsibilities included: (1) advising SKE of any items that require attention; (2) Giving SKE immediate access to funds when transferred from COMSYS into SKE and ILSS'S joint banking account; (3) Help negotiate items as requested/needed; and (4) Provide on-going non-specific support as requested by SKE.

/ / /

---

Sam Kholi Enterprises, Inc. v. Comsys Service, LLC .                              Case No.
Complaint

23. SKE for its part, performed all terms and conditions of the SOW which were not excused, waived or discharged. ILSS did not. Instead, ILSS breached the SOW in multiple ways to SKE's detriment in an amount in excess of $75,000.00, the exact amount to be proven at the time of trial, including but not limited to ILSS failed to pay SKE what it owed SKE as BMC's managed service provider for BMC's payroll to BMC's employees funded by SKE.

**SKE Agreement With ILSS**

24. In addition to SKE's SOW with ILSS with respect to the BMC Agreement, on or about January 2, 2004 SKE and ILSS also entered into a Payrolling.com General Payrolling Agreement (the "ILSS Agreement"). A true and correct copy of the ILSS Agreement is attached hereto as Exhibit "D" and its terms are incorporated herein by reference as though fully set forth.

25. SKE, for its part, performed all terms and conditions of the ILSS Agreement which were not excused, waived or discharged. ILSS did not. Instead, beginning in or about May of 2007, ILSS breached the ILSS Agreement by failing to inform SKE that various of its employees traveled. As ILSS was aware, any employee that traveled was subject to a 3% markup. Despite this, ILSS failed to inform SKE of which employees were subject to the 3% markup.

26. Although SKE has made repeated requests and demands for information related to the employees to which a 3% markup applied, ILSS refused and continues to refuse to provide SKE with the necessary information as required pursuant to the terms of the ILSS Agreement. As a result, there is an amount due and owing from ILSS to SKE for the 3% markup for all employees that traveled, the exact amount to be proven at the time of trial.

27. Moreover, during the course of SKE's relationship with ILSS, on at least two separate occasions, ILSS claimed SKE and PAYROLLING overcharged it in the amount of $58,000.00 and $232,000.0, respectively. Without any proof or documentation, SKE and PAYROLLING refunded these funds to ILSS. SKE and

1  PAYROLLING have now determined that the refunds issued to ILSS were not
2  warranted. Instead, ILSS is obligated to return the refunded funds to SKE and
3  PAYROLLING. Despite demand for return of the refunded funds, ILSS has refused and
4  continues to refuse to return the refunded funds to SKE and PAYROLLING. As a result,
5  SKE and PAYROLLING have been damaged in an amount in excess of $290,000.00, the
6  exact amount to be proven at the time of trial.

7                              **FIRST CLAIM**
8            **(BREACH OF CONTRACT AGAINST ALL DEFENDANTS)**

9        28.    PLAINTIFFS reallege and incorporate by reference as though fully set forth
10  herein paragraphs 1 through 27 as set forth above.

11  **The COMSYS Agreement**

12        29.    On or about April 4, 2005, SKE and COMSYS entered into the COMSYS
13  Agreement as set forth above.

14        30.    SKE duly performed those terms of the COMSYS Agreement which were
15  not excused or discharged. Beginning in or about January 1, 2008, however, COMSYS
16  breached the COMSYS Agreement by failing to pay SKE for services rendered to BMC
17  and thereafter failing to deal in good faith with SKE as required by the terms of the
18  COMSYS Agreement  resulting in damages in excess of $75,000.00, the exact amount
19  to be proven at the time of trial. COMSYS also mis-classified BMC employees as
20  independent contractors in order to evade payroll taxes, thus causing State authorities to
21  audit SKE for misclassifying these employees as independent contractors. The potential
22  liability to SKE arising from this audit is, as of the date below written, unknown, but it
23  could be in excess of $4,000,000.00.

24        31.    As a direct and proximate result of COMSYS's material breaches of the
25  COMSYS Agreement, SKE has suffered damages in an amount in excess of $75,000.00
26  which will be proven at trial, plus prejudgment interest, finance charges, attorneys' fees,
27  costs, and expenses.

28  / / /

---

Sam Kholi Enterprises, Inc. v. Comsys Service, LLC  .                        Case No.
Complaint

8

**ILSS Agreement with BMC**

32. On or about August 25, 2008, ILSS and BMC entered into an agreement as set forth above which included a SOW specifically between SKE and ILSS.

33. SKE duly performed those terms of the SOW which were not excused or discharged. Beginning in or about June of 2010, however, ILSS breached the SOW by failing to pay SKE for services rendered to BMC resulting in damages in excess of $75,000.00, the exact amount to be proven at the time of trial.

34. As a direct and proximate result of ILSS's material breaches of the SOW, SKE has suffered damages in an amount in excess of $75,000.00 which will be proven at trial, plus prejudgment interest, finance charges, attorneys' fees, costs, and expenses.

**The ILSS Agreement**

35. On or about January 2, 2004, SKE and ILSS entered into the ILSS Agreement as set forth above.

36. SKE duly performed those terms of the ILSS Agreement which were not excused or discharged. Beginning in or about March of 2007, however, ILSS breached the ILSS Agreement by failing to disclose to SKE which of its employees were traveling and therefore subject to a 3% markup resulting in damages to SKE in an amount currently unknown but which will be proven at the time of trial.

37. In addition, beginning in or about June of 2009 and again in March of 2010, ILSS requested refunds from SKE and PAYROLLING in the approximate amounts of $58,000.00 and $232,000.00, respectively, which were issued. SKE and PAYROLLING have learned that the refunds issued to ILSS were not justified. In breach of the ILSS Agreement, however, ILSS had failed and refused and continues to fail and refuse to return the refunded funds to SKE and PAYROLLING to the detriment of PLAINTIFFS in an amount in excess of $290,000.00, the exact amount to be proven at the time of trial.

/ / /

/ / /

/ / /

Sam Kholi Enterprises, Inc. v. Comsys Service, LLC .
Complaint

Case No.

9

38.    As a direct and proximate result of ILSS's material breaches of the ILSS Agreement, SKE and PAYROLLING have suffered damages in an amount in excess of $75,000.00 which will be proven at trial, plus prejudgment interest, finance charges, attorneys' fees, costs, and expenses.

## SECOND CLAIM

### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST ALL DEFENDANTS)

39.    PLAINTIFFS reallege and incorporate by reference as though fully set forth herein paragraphs 1 through 38 as set forth above.

40.    When DEFENDANTS entered into the Agreements as set forth above, DEFENDANTS, and each of them, agreed to an implied covenant of good faith and fair dealing. This covenant obligated DEFENDANTS to refrain from action which would deprive SKE of the bargained-for benefits of the Agreements.

41.    DEFENDANTS, however, failed to refrain from such conduct. Among other things, COMSYS, via manipulation of the Fieldglass software, deliberately rendered incomprehensible digital records which would reveal what COMSYS truly owed to SKE. This manipulation was intended to – and did – make it extremely difficult for SKE to determine that COMSYS were cheating it out of money owed to SKE under the Agreement, thus violating DEFENDANTS' implied covenant of good faith and fair dealing. COMSYS also misclassified employees as independent contractors, in order to evade payroll taxes, thus causing State authorities to audit SKE for misclassifying these employees as independent contractors. The potential liability to SKE arising from this audit is, as of the date below written, unknown, but could be in the millions of dollars.

42.    With regard to ILSS, despite repeated requests to inform SKE of the employees to which the 3% markup for travel applied, ILSS refused to comply and provide the necessary information to SKE, thus violating ILSS's implied covenant of good faith and fair dealing.

/ / /

43.    As a direct and proximate result of DEFENDANTS', and each of them, misconduct as alleged herein, SKE has suffered damages in an amount in excess of $75,000.00, which will be proven at trial, plus prejudgment interest, finance charges, attorneys' fees, costs, and expenses.

## THIRD CLAIM

## (ACCOUNT STATED AGAINST ALL DEFENDANTS)

44.    PLAINTIFFS reallege and incorporate by reference as though fully set forth herein paragraphs 1 through 43 as set forth above.

45.    Between January 1, 2008 and the present, at San Diego, California, DEFENDANTS, and each of them, became indebted to SKE on an account stated in the amount in excess of $1,924,285.70 for SKE's services delivered to DEFENDANTS.

45.    SKE has repeatedly demanded payment from DEFENDANTS and has not received it. Despite the demands, there is now owing the sum of at least $1,924,285.70, not including interest, attorney's fees, costs, and expenses.

46.    As a direct and proximate result of DEFENDANTS', and each of them, failure to pay for the services provided by SKE, SKE has suffered damages in an amount estimated to exceed $1,924,285.70, and which to be proven at trial, plus prejudgment interest, finance charges, attorney's fees, costs, and expenses.

## FOURTH CLAIM

## (QUANTUM MERUIT AGAINST ALL DEFENDANTS)

47.    PLAINTIFFS reallege and incorporate by reference as though fully set forth herein paragraphs 1 through 46 as set forth above.

48.    Between March of 2007 and the present, at San Diego, California, DEFENDANTS, and each of them, became indebted to PLAINTIFFS for work, labor and services furnished at the special instance and request of DEFENDANTS. The reasonable value for this work, labor and services is in excess of $2,000,000.00.

49.    DEFENDANTS, and each of them, knew or had reason to know that the work, labor, and services received from PLAINTIFFS were supplied by PLAINTIFFS

1 | because DEFENDANTS accepted those services and PLAINTIFFS sent monthly
2 | invoices to DEFENDANTS for that work, labor and services.

3 |      50.    Despite PLAINTIFFS repeated demands for payment, DEFENDANTS, and
4 | each of them, failed and refused to pay the reasonable value of the work, labor and
5 | services provided by PLAINTIFFS and there is now due and owing from
6 | DEFENDANTS, and each of them, to PLAINTIFFS a sum in excess of $2,000,000.00,
7 | plus prejudgment interest at the maximum rate provided by law.

### PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFFS pray for relief as follows:

1.    For general and special damages according to proof at the time of trial;

2.    For attorney's fees, costs, and expenses;

3.    For prejudgment interest at the maximum legal rate; and

4.    For such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated:  May 2, 2011                                TEEPLE HALL, LLP

                                                          /S/ Gregory M. Garrison
                                       By:    _____
                                              Gregory M. Garrison, Attorneys
                                              for plaintiffs SAM KHOLI
                                              ENTERPRISES, INC. and
                                              PAYROLLING.COM CORP.

Sam Kholi Enterprises, Inc. v. Comsys Service, LLC  .                    Case No.
Complaint
                                          12

%JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS
SAM KHOLI ENTERPRISES, INC., a California corporation;
PAYROLLING.COM CORP., a California corporation

## DEFENDANTS
COMSYS SERVICES, LLC, a Delaware corporation;
INNOVATIVE LOGISTICS SUPPORT SERVICES CORP., a Louisiana corporation; and DOES 1-10,

**(b)**  County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number) TEEPLE HALL, LLP
Gregory M. Garrison, Esq. SBN 165215    Tel. (858) 622-7878
9255 Towne Centre Drive, Suite 500, San Diego, CA 92121

Attorneys (If Known)

'11CV0970 W    NLS

## II.  BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 |  | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health |  | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury |  | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General |  | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** |  | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  | Under Equal Access |
|  | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - |  | to Justice |
|  | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee |  | ☐ 950 Constitutionality of |
|  | Other |  | ☐ 465 Other Immigration |  | State Statutes |
|  | ☐ 440 Other Civil Rights |  | Actions |  |  |

## V.  ORIGIN   (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI.  CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Breach of Contract

## VII.  REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY
(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE
May 4, 2011

SIGNATURE OF ATTORNEY OF RECORD
/s/  Gregory M. Garrison

**FOR OFFICE USE ONLY**

RECEIPT #  _____  AMOUNT  _____  APPLYING IFP  _____  JUDGE  _____  MAG. JUDGE  _____

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**    **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**           Example:      U.S. Civil Statute: 47 USC 553
                                                        Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# EXHIBIT "C"

Filed
.10 December 14 P4:53
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-10-004361

CAUSE NO.: _____

| | |
|---|---|
| SAM KHOLI, an individual | IN THE DISTRICT COURT |
| Plaintiff, | |
| vs. | TRAVIS COUNTY, TEXAS |
| STEVEN GREGORY WHITE, an individual; JEFFREY A. ARMSTRONG, an individual; NAMAN, HOWELL, SMITH & LEE, PLLC, a domestic limited liability company | _____ JUDICIAL DISTRICT |
| Defendants. | |

## PLAINTIFF'S ORIGINAL PETITION

### TO THE HONORABLE COURT:

Plaintiff SAM KHOLI files this Original Petition and complains of and against defendants STEVEN GREGORY WHITE, an individual; JEFFREY A. ARMSTRONG, an individual; and NAMAN, HOWELL, SMITH & LEE, PLLC, a domestic limited liability company, and for causes of action would respectfully show to this Honorable Court and jury as follows:

### A. DISCOVERY CONTROL PLAN

1. Pursuant to Texas Rule of Civil Procedure 190 and 190.3, Plaintiff intends to conduct discovery under Level 2. Plaintiff reserves the right to request a discovery control plan from the Court under Level 3 pursuant to Texas Rule of Civil Procedure 190.4.

### B. PARTIES

1. Plaintiff SAM KHOLI ("MR KHOLI") is, and at all times relevant was an individual residing in the City of San Diego, County of San Diego, and State of California and may be contacted at 4626 Albuquerque Street, San Diego, California 92109.

/ / /

/ / /

2.     Defendant STEVEN GREGORY WHITE ("WHITE") is, and at all times relevant was, an individual residing in the City of Waco, County of McLennan, and State of Texas, who may be served with process at his place of employment, 8310 North Capital of Texas Highway, Austin, Travis County, Texas 78731, or wherever he may be found. At all relevant times, WHITE was an attorney licensed to practice in the State of Texas, State Bar No.: 21329050, with his principal place of business in Austin, Texas.

3.     Defendant JEFFREY A. ARMSTRONG ("ARMSTRONG") is, and at all times relevant was, an individual residing in the City of Waco, County of McLennan, and State of Texas, who may be served with process at his place of employment, 900 Washington Avenue, 7th Floor, Waco, County of McLennan, Texas, or wherever he may be found. At all relevant times, ARMSTRONG was an attorney licensed to practice in the State of Texas, State Bar No.: 24038747, with his principal place of business in Waco, Texas.

4.     Defendant NAMAN, HOWELL, SMITH, & LEE, PLLC ("NAMAN") is a domestic limited liability company in existence in the State of Texas consisting of lawyers and other professionals with its principal place of business located at 8310 North Capital of Texas Highway, Austin, Texas 78731 in the County of Travis, State of Texas. NAMAN may be served with process by serving it agent, Roy L. Barrett, 400 Austin Avenue, Suite 800, Waco, Texas 76701.

## C. VENUE AND JURISDICTION

5.     The District Courts of Travis County, Texas have jurisdiction over this action because the facts giving rise to this action occurred in part within Travis County, Texas and the damages sought by Plaintiff are well in excess of the minimum jurisdictional limits of this Court.

6.     Venue is proper in Travis County, Texas pursuant to Texas Civil Practice and Remedies Code section 15.001 because that is where part of the cause of action accrued.

## D. GENERAL ALLEGATIONS OF FACT

7.    In 2008, MR. KHOLI retained NAMAN, HOWELL, SMITH, & LEE, PLLC as his attorneys to represent him in an individual capacity as well as Sam Kholi Enterprises, Inc. in pursuing litigation against both Tom Thompson dba Thompson Trucking and Jones Motor Group, Inc. To this end, on April 18, 2008, DEFENDANTS filed a complaint on MR. KHOLI's behalf in the United States District Court for the Western District, Waco Division, Case No.: W08CA105 entitled *Sam Kholi Enterprises, Inc. v. Tom R. Thompson dba Thompson Trucking*.

8.    Although MR. KHOLI expressly instructed DEFENDANTS to file suit against both Jones Motor Group, Inc. and Mr. Thompson, DEFENDANTS failed to do so. Specifically, "Plaintiff's Original Complaint" was filed solely against Mr. Thompson and the lone claim asserted was for fraud in the inducement.

### The Underlying Action

9.    In 2007, MR. KHOLI contacted Mr. Thompson after seeing an advertisement seeking truck driver owner/operators. When MR. KHOLI contacted Thompson Trucking, the woman who answered the telephone stated "Jones Motor Group". This initially confused MR. KHOLI as he thought he was calling Thompson Trucking. However, the woman who answered told him he had the right telephone number.

10.    After multiple telephone conversations with Mr. Thompson, in the fall of 2007 MR. KHOLI traveled to Coryell County, Texas with the hope of purchasing Thompson Trucking, which Mr. Thompson had informed him had a well established customer base that MR. KHOLI could service with its existing inventory of tractors and trailers as well as any tractors and trailers purchased from the sale of the company.

11.    When MR. KHOLI met with Mr. Thompson, Mr. Thompson represented to MR. KHOLI that he had an extensive customer list that would stay loyal and could be transferred as a legitimate asset to any buyer who purchased Thompson Trucking. Mr. Thompson further represented to MR. KHOLI that his key employees were bound

by non-competition agreements and would remain with the company in order to continue to serve and maintain the relationships with the customers that Mr. Thompson had under ongoing contractual agreements.

12. Based upon the above representations, among others, on October 12, 2007, MR. KHOLI and Mr. Thompson entered into a memorandum of understanding entitled "Agreement for the Purchase and Sale of Business" wherein Mr. Thompson agreed to sell MR. KHOLI his business that included real estate valued at $150,000.00, trailers valued at $400,000.00, other equipment valued at $50,000.00, and goodwill valued at $3,030,000.00 (the "Agreement"). Mr. Thompson's valuation of the business' goodwill was based upon his long-term and ongoing customer and client relationships and key employees who maintained those relationships.

13. Pursuant to the Agreement, on or about October 12, 2007, MR. KHOLI paid Mr. Thompson an initial deposit of $646,666.66 and began making monthly installment payments of $16,666.00 per month towards the remaining outstanding balance of $2,983,333.34 as agreed. In turn, Mr. Thompson was obligated to transfer title to his real property located at 206 South 8th Street, Copperas Cove, Texas 76522 and title to 43 trailers as well as furniture, equipment, and other tangible assets to MR. KHOLI. Mr. Thompson never transferred title to his real property to MR. KHOLI, never transferred clean title to the 43 trailers to MR. KHOLI, and ultimately blocked MR. KHOLI's access to the furniture, equipment, and other tangible assets. In fact, MR. KHOLI later learned that Mr. Thompson did not even own and/or hold title to the 43 trailers when he entered into the Agreement.

14. In the weeks and months that followed, the terms of the sale were mutually changed several times; however, Mr. Thompson's customer list and relationships as well as his key employees who maintained those relationships remained the primary financial component of the sale.

15. Then, in January of 2008, MR. KHOLI suspected that Mr. Thompson did not, in fact, have a well established customer base as represented. Instead, Mr. KHOLI

began to believe that Thompson Trucking's business mostly relied upon third party brokers, and its most important client, known as Harbor Freight, was actually controlled by Jones Motor Group, Inc.

16.    When MR. KHOLI voiced his concerns to Mr. Thompson, Mr. Thompson assured MR. KHOLI that his top producing account – Harbor Freight – was his actual customer and would stay with the business after the sale. Based upon this assurance, MR. KHOLI paid another $600,000.00 on January 31, 2008 towards the outstanding balance owed on the purchase price.

17.    Despite Mr. Thompson's representations that his key employees were bound by non-compete agreements, in about March of 2008 they left the company and began to work for Jones Motor Group, Inc. Even after this occurred, at no time did Mr. Thompson ever produce the alleged non-compete agreements to MR. KHOLI. Moreover, in March of 2008, MR. KHOLI finally confirmed that Harbor Freight was controlled by Jones Motor Group, Inc., not Mr. Thompson as he had represented.

18.    When Mr. Thompson's employees left to work for Jones Motor Group, Inc., they destroyed or removed business records vital to MR. KHOLI's business interests and abandoned rolling truck deliveries operating at the time of departure. MR. KHOLI was unable to recover all of the trailers then operating, and has unpaid invoices pursuant to those loads that were delivered as promised by MR. KHOLI. Furthermore, Mr. Thompson locked MR. KHOLI out of the computer systems regarding the rolling stock as well as employee records, to the detriment of MR. KHOLI's normal business operations.

19.    As a result, MR. KHOLI paid $1,313,333.33 for Thompson Trucking and was left with nothing – no title to real property, no clean title to the trailers, no equipment, furniture, or other tangible assets, no key employees, and no well-established customer base.

20.    Despite this, on May 23, 2008, Mr. Thompson filed a counter-claim against MR. KHOLI both as an individual and as Sam Kholi Enterprises, Inc. in which

he alleged breach of contract. Ultimately, as a result of the professional negligence and malpractice of DEFENDANTS, on June 9, 2009 Mr. Thompson obtained a judgment against MR. KHOLI and Sam Kholi Enterprises, Inc. in the amount of $2,316,670.00 plus post-judgment interest at the rate of 0.48%. Mr. Thompson was further awarded pre-judgment interest in the amount of $132,189.00 and attorneys' fees and costs in the amount of $30,569.08 and $6,475.00.

**DEFENDANTS' Malpractice**

21.    But for the professional negligence and malpractice of DEFENDANTS, MR. KHOLI would have prevailed in the Underlying Action. Unfortunately, DEFENDANTS' negligence was far-reaching and included, but is not limited to: (1) Failing to file suit against Jones Motor Group, Inc.; (2) Failing to allege or introduce any evidence whatsoever – whether expert or otherwise – that the alleged personal guaranty signed by MR. KHOLI was a forgery; (3) Failing to file suit for transfer of title to the real property or for clean title to the 43 trailers and/or for rescission/restitution; and (4) Failing to introduce evidence and explain to the jury that Mr. Thompson was under an exclusive employment agreement and legally bound by a non-compete agreement to another company when he likewise agreed to be employed and legally bound by a non-compete agreement with Sam Kholi Enterprises, Inc.

**Failure to Introduce Any Evidence as to Forgery**

22.    In the Underlying Action, MR. KHOLI's deposition was taken on September 24, 2008. At that time, MR. KHOLI was shown two separate documents which Mr. Thompson's counsel purported to be the Agreement at issue. Both of these Agreements included a personal guaranty allegedly signed by MR. KHOLI. Specifically, Mr. Thompson's counsel questioned MR. KHOLI as follows:

Q:    I'll ask you the same for – The next paragraph is entitled Guaranty, and below that paragraph there's a signature block for Sam Kholi, Guarantor. Is that your signature?

A:    I don't think so.

Q:   What makes you think it's not your signature?

A:   Because this is a memorandum of understanding.

Q:   Because it's a memorandum of understanding, it makes you think that somebody else signed your name there?

A:   It's very possible.

Q:   Well, Mr. Kholi, my question is: Do you remember signing that - - your name right above the typed words Sam Kholi, Guarantor?

A:   And I answered and said I don't remember.

Q:   . . . You don't remember if you signed it or not?

A:   I don't think I signed it, no.

23.   After being presented with the Agreement with a personal guaranty included at his deposition, MR. KHOLI explained to DEFENDANTS that he did not sign a personal guaranty with the Agreement. As a result, MR. KHOLI instructed DEFENDANTS to hire a handwriting analyst as an expert witness to testify as to whether MR. KHOLI's signature on the personal guaranty was a forgery.

24.   Despite this, two months later, DEFENDANTS filed a motion for summary judgment on MR. KHOLI's behalf in which they submitted – without MR. KHOLI's knowledge or consent -- the very Agreement MR. KHOLI testified that he did not sign *with the personal guaranty* attached to the Court as the Agreement entered into by the parties.

25.   Moreover, DEFENDANTS failed and refused to designate an expert witness to testify with regard to whether the signature on the personal guaranty was a forgery. Instead, at trial DEFENDANTS failed to introduce any evidence, or even raise a question, as to whether MR. KHOLI personally guaranteed the Agreement or not.

26.   As a direct result of DEFENDANTS' professional negligence and malpractice as it relates to MR. KHOLI's purported personal guaranty, a judgment was entered against MR. KHOLI as an individual in the Underlying Action.

///

### Failure to Sue for Transfer of Title

27.    A material term of the Agreement between Mr. Thompson and MR. KHOLI required Mr. Thompson to transfer title to both real property and 43 trailers to MR. KHOLI on October 12, 2007. A review of the public record establishes that Mr. Thompson never transferred title to his real property to MR. KHOLI as required under the terms of the Agreement. Moreover, although Mr. Thompson transferred title to the 43 trailers to MR. KHOLI, said transfer was not done in conformity with the requirements of the law. As a result, Mr. Thompson never transferred clean title to the 43 trailers to MR. KHOLI. In fact, on October 12, 2007, Mr. Thompson did not own or have title to any of the 43 trailers as he represented to MR. KHOLI.

28.    Pursuant to the terms of the Agreement, Mr. Thompson was required to transfer title to both the real property and the 43 trailers on October 12, 2007 when MR. KHOLI signed the Agreement and made his first lump sum payment of $646,666.66. Mr. Thompson failed to do so. Despite this, DEFENDANTS failed to file suit for the transfer of clean title from Mr. Thompson to MR. KHOLI of both the real property and the 43 trailers and/or for rescission/restitution of the monies paid by MR. KHOLI to Mr. Thompson.

29.    In addition, DEFENDANTS failed to adequately explain Mr. Thompson's material breach of the contract on October 12, 2007 to the jury. If DEFENDANTS had not acted negligently in their representation of MR. KHOLI, evidence would have been presented to the jury in an understandable manner to explain that Mr. Thompson breached the Agreement on October 12, 2007 while MR. KHOLI did not stop payment until five months later in March 2008. DEFENDANTS failed to do so. As a result, judgment was entered against both MR. KHOLI and Sam Kholi Enterprises, Inc.

### Failure to Adequately Explain the Consulting and Non-Compete Agreement

30.    Although not disclosed to MR. KHOLI until discovery in the Underlying Action, on September 23, 2002, Mr. Thompson entered into a Consulting and Non-Compete Agreement with Jones Express, Inc., a company of Jones Motor Group, Inc.

According to the express terms of this Consulting Agreement, it continued year to year until terminated. Thus, at the time MR. KHOLI purchased Thompson Trucking from Mr. Thompson, he was exclusively and legally bound to Jones Express, Inc. ("JEX") by the terms of the Consulting Agreement.

31.     Specifically, Thompson agreed to devote his "full working time and attention to the service of JEX and to the affairs of JEX." Moreover, pursuant to the terms of the Consulting Agreement, "Thompson shall not, without the written consent of JEX, directly or indirectly render services to or for a person, association, or other business that competes with the interests of JEX."

32.     In addition, the Consulting Agreement included a covenant not to compete. In this regard, "Thompson agrees that during the term of this Agreement Thompson shall not consult with or perform any freight transportation and/or consulting services for any competing company, group or facility."

33.     A material term of the Agreement MR. KHOLI reached with Mr. Thompson required Mr. Thompson to remain employed by MR. KHOLI for the term of one year after MR. KHOLI purchased Thompson Trucking and further required Mr. Thompson to sign a non-compete agreement with Sam Kholi Enterprises, Inc.

34.     Based on this evidence, which was available to DEFENDANTS in the Underlying Action, Mr. Thompson intentionally concealed a material fact from MR. KHOLI in the negotiation of the Agreement. Namely, Mr. Thompson was already exclusively and legally bound to the employ of JEX and had a covenant not to compete with it. As a result, Mr. Thompson could not fulfill a material term of his obligations to MR. KHOLI – Mr. Thompson could not legally work for Sam Kholi Enterprises, Inc. and he could not sign a non-compete agreement.

35.     Thus, MR. KHOLI could not have first materially breached the Agreement with Mr. Thompson by failing to pay his installment payment in March of 2008 since Mr. Thompson could not legally perform his obligations under the terms of the Agreement from the time it was entered into on October 12, 2007.

## Failure to Sue Jones Motor Group, Inc.

36.    When MR. KHOLI initially retained DEFENDANTS, he instructed them not only to file suit against Mr. Thompson, but against Jones Motor Group, Inc. as well. Why? MR. KHOLI met with representatives from Jones Motor Group, Inc. before he entered into the Agreement with Mr. Thompson. At no time, however, did any representative of Jones Motor Group, Inc. inform MR. KHOLI of the Consulting Agreement it had with Mr. Thompson.

37.    Instead, pursuant to numerous e-mails between Mr. Thompson and Jones Motor Group, Inc. which were revealed during discovery in the Underlying Action, Jones Motor Group, Inc. encouraged Mr. Thompson to enter into the Agreement with MR. KHOLI because a material term of that Agreement required all of Mr. Thompson's debts owed to Jones Motor Group, Inc. to be paid off. Thereafter, the evidence established that Jones Motor Group, Inc. intended to take over the trucking business which Sam Kholi Enterprises, Inc. purchased from Mr. Thompson.

38.    To evidence this, in the beginning of March, 2008, representatives of Jones Motor Group, Inc. met with key employees of Sam Kholi Enterprises, Inc. At that time, MR. KHOLI's employees were shown a contract between Sam Kholi Enterprises, Inc.'s client – Harbor Freight – and the Jones Motor Group, Inc. That contract indicated that despite Mr. Thompson's representations otherwise, Mr. Thompson's "loyal client" Harbor Freight was leaving Sam Kholi Enterprises, Inc. for Jones Motor Group, Inc. A few days later, Sam Kholi Enterprises, Inc.'s key employees also left to work for Jones Motor Group, Inc.

39.    At that time, Mr. Thompson prepared a document which was intended to explain: "Above is a normal weekly invoice to a primary customer of Thompson Trucking produced by Jones Express based upon the computer input provided by the Thompson Trucking office in Copperas Cove, TX. The information below has been added by Tom Thompson to aid in the understanding of the financial impact of the

Jones Motor Group premeditated actions to steal a business owned by another."
[Emphasis added].

40.    Despite all of this evidence, DEFENDANTS failed and refused to file suit against Jones Motor Group, Inc. as part of the litigation against Mr. Thompson. As a result, MR. KHOLI has lost his strategic ability to sue both Mr. Thompson and Jones Motor Group, Inc. in a single lawsuit. Instead, MR. KHOLI must now try to pursue Jones Motor Group, Inc. for whatever claims remain more than three years after the fact in a separate lawsuit while accruing additional legal fees.

41.    As a result of DEFENDANTS' professional negligence and malpractice, MR. KHOLI has a judgment in the amount of $2,316,670.00 against him as an individual, plus post-judgment interest at the rate of .48% per annum, plus pre-judgment interest in the amount of $132,189.00 as well as attorneys' fees and costs totaling $30,569.08 and $6,475.00. In addition, MR. KHOLI and Sam Kholi Enterprises, Inc. paid $1,313,333.33 for Thompson Trucking and received nothing in exchange. Thus, DEFENDANTS' professional negligence and malpractice have caused MR. KHOLI to suffer damages in excess of $3,700,000.00, the exact amount to be proven at the time of trial. The total damages MR. KHOLI suffered as a result of DEFENDANTS' actions exceed the jurisdictional minimum of this Court.

## E. CAUSES OF ACTION

## COUNT I - LEGAL MALPRACTICE

42.    PLAINTIFF repeats and realleges against all DEFENDANTS the allegations contained in paragraphs 1 through 42 of this Complaint as if fully set forth herein.

43.    By taking the actions indicated above, DEFENDANTS had a duty to exercise the skill, prudence, and diligence exercised by other attorneys similarly situated in the community in the area of civil litigation.

///

44.   By taking the actions and inactions indicated above DEFENDANTS breached the aforementioned duty by, among other things: (1) Failing to file suit against Jones Motor Group, Inc.; (2) Failing to allege or introduce any evidence whatsoever – whether expert or otherwise – that the alleged personal guaranty signed by MR. KHOLI was a forgery; (3) Failing to file suit for transfer of title to the real property or for clean title to the 43 trailers and/or for rescission/restitution; and (4) Failing to introduce evidence and explain to the jury that Mr. Thompson was under an exclusive employment agreement and legally bound by a non-compete agreement to another company when he likewise agreed to be employed and bound by a non-compete agreement with Sam Kholi Enterprises, Inc.

## COUNT II - PROFESSIONAL NEGLIGENCE

45.   MR. KHOLI repeats and realleges against all DEFENDANTS the allegations contained in paragraphs 1 through 42 of this Complaint as if fully set forth herein.

46.   By taking the actions indicated above, DEFENDANTS had a duty to exercise the skill, prudence, and diligence exercised by attorneys similarly situated in the area of civil litigation.

47.   By taking the actions and inactions indicated above, DEFENDANTS breached the aforementioned duty by, among other things: (1) Failing to file suit against Jones Motor Group, Inc.; (2) Failing to allege or introduce any evidence whatsoever – whether expert or otherwise – that the alleged personal guaranty signed by MR. KHOLI was a forgery; (3) Failing to file suit for transfer of title to the real property or for clean title to the 43 trailers and/or for rescission/restitution; and (4) Failing to introduce evidence and explain to the jury that Mr. Thompson was under an exclusive employment agreement and was legally bound by a non-compete agreement to another company when he likewise agreed to be employed and bound by a non-compete agreement with Sam Kholi Enterprises, Inc.

/ / /

## COUNT III – DAMAGES

48.    MR. KHOLI repeats and realleges against all DEFENDANTS the allegations contained in paragraphs 1 through 42 of this Complaint as if fully set forth herein.

49.    As a direct and proximate result of DEFENDANTS' breach of their professional duties as outlined above, MR. KHOLI has suffered losses and damages in a sum within the jurisdictional limits of the Court, for which he sues in this Petition. Specifically, MR. KHOLI has suffered losses and damages as a result of DEENDANTS' breach of their professional duties in excess of $3,700,000.00, the exact amount to be proven at the time of trial. As set forth herein, MR. KHOLI has suffered additional damages and seeks recovery for same from DEFENDANTS, jointly and severally.

50.    MR. KHOLI further requests recovery of pre-judgment interest and post-judgment interest at the statutory rate or at such other rate as is set by this Court.

### F. JURY DEMAND

51.    MR. KHOLI hereby respectfully requests a trial by jury of all issues of fact in this case.

### PRAYER

52.    As a result of the facts stated herein and alleged above, MR. KHOLI has been made to suffer and sustain, at the hands of the DEFENDANTS, damages in an amount far in excess of the minimum jurisdictional requirements of this Court and in such amount as the evidence may show proper at the time of trial. Upon a trial of the merits of the above action, based upon the common law and statutory remedies set forth in this Petition and other to be proved at the time of trial, MR. KHOLI shows he is entitled to compensation for the injuries suffered at the hands of the DEFENDNATS.

/ / /

/ / /

WHEREFORE, PREMISES CONSIDERED, MR. KHOLI prays that DEEFNDANTS be cited and appear herein, and that upon final trial or other disposition of this lawsuit, MR. KHOLI have and recover judgment against DEFENDANTS jointly and severally for the following:

a)   all damages proven at the time of trial;

b)   pre-judgment and post-judgment interest as provided by law;

c)   costs of court; and

d)   such other and further relief, at law or in equity, to which MR. KHOLI is justly entitled.

Respectfully submitted,

Dated: December 8, 2010          SAM KHOLI

By: _____
           Sam Kholi, individual
           4626 Albuquerque Street
           San Diego, California 92109
           Telephone:   (858) 866-2600
           Facsimile:    (858) 866-2657